MATILDA C. MORRISON, plaintiff in error, *vs.* CHARLES LATIMER, defendant in error.

To entitle the owner of land to an injunction restraining an adjacent proprietor from continuing the improvement of his lot by grading and excavating up to the line of division between the two lots, on the ground that it is a trespass in removing the natural support of complainant's land, it should be made to appear that complainant's soil has been displaced by such excavation, or that it is of such character that it cannot stand by its own coherence, and that complainant's land will be materially damaged thereby. Under the facts in this case, we do not think the chancellor abused his discretion in refusing the injunction.

Injunction.　Land.　Before Judge HOPKINS.　Fulton county.　At Chambers.　December 11th, 1873.

Matilda C. Morrison filed her bill against Charles Latimer, making, in substance, the following case:

Complainant owns and lives on a lot in the city of Atlanta, on the west side of Washington street, fronting on same fifty-two and a half feet, and running back westward two hundred and fifty-five feet.　The defendant owns a lot which bounds complainant's lot all along its north side.　The surface of complainant's lot is more elevated than that of defendant's, except on the line where the two meet.　In the natural condition of said two lots, the soil of defendant's furnished a sufficient and permanent lateral support to the adjacent and higher soil of complainant's lot, to which support complainant claims a right, and insists that defendant has no authority to deprive her of such support by excavating, digging down and removing the soil of his lot; yet, in disregard of her said right, said defendant has commenced digging down, excavating and removing the soil off his said lot in immediate connection and contact with the soil of complainant, and has made extensive progress in doing so.　He has dug down and removed the soil along said dividing line some seventy-five to one hundred feet, and to the depth of from six to ten feet, said depth being variable, thus forming on the north line a perpendicular bank or dirt wall of the depth aforesaid, and he declares his intention to continue so digging down and removing the soil along the whole of said dividing line, without leaving any lateral support to the soil of complainant, and that he claims a right to do so.　Should said defendant carry out his threats, the wall which will be thereby made along the whole of said dividing line will vary in depth from two to ten feet.　The natural result of this excavation and removal will be the constantly recurring damage and injury to your complainant by the falling into the excavation so made of the soil of her said lot, all along said bank, thereby diminishing the extent of the width of the surface thereof from two to ten

feet, according to the height of said bank, and to prevent which permanently, would require the erection of a rock wall ranging from one and a half to two feet in thickness, which would cost not less than $600 00. Already defendant has by his said acts damaged complainant $275 00, and will damage her still more unless restrained. Complainant has often notified defendant of her rights and urged him to desist, but he still perseveres. There are no houses or other improvements on her said lot anywhere near the said dividing line, and only the lateral support of the soil in its natural condition is insisted on.

Prayer that the defendant be enjoined from further proceeding with his excavation, and decreed to provide permanent support to that part which has already been dug down, and to pay the expense thereof.

The defendant filed an affidavit containing the following facts: Does not think he has damaged complainant's lot by his said grading, and does not think it will injure her for him to grade his in the manner complained of, which he does intend to do, etc. Defendant is able to respond for all damages, if any be sustained; thinks he has the right so to grade his lot; thinks it will greatly improve its value; has long intended to do so; no wish to injure complainant. Before complainant bought her lot defendant notified her husband that he intended so to grade his own.

The chancellor refused the injunction, and complainant excepted.

E. N. BROYLES, for plaintiff in error.

J. M. CALHOUN & SON, for defendant.

TRIPPE, Judge.

We do not deny the principle that the owner of land has not the right to excavate his soil to the line of an adjacent proprietor, so as to cause his neighbor's land to fall away, and thereby deprive him of the use of his land. It has been rec-

ognized by a long line of authorities and by distinguished judges ever since it was first announced by Rolle, in his statement of the case of Wilde *vs.* Minsterly, in the time of Charles I: 2 Rolle Abr., 564, Title, Trespass; See Humphries *vs.* Brogden, 1 Law and Equity Reports, 241; 3 B. & A., 871; 4 Paige, 169; 2 Coms., 159; 21 Barb., 409; 2 Washburn on Real Prop., 75; Kerr on Injunction, 366. Nor does the decision in the case of *Mitchell et al., vs. Mayor and Council of Rome*, 49 *Georgia*, 19, conflict with or deny this principle. The question decided in that case was that the owner of a building erected on the line of his lot cannot, in Georgia, by *lapse of time*, acquire a *prescriptive* right to the lateral support of the adjacent soil, especially against a public or a municipal corporation.

But the case under consideration was an application for an injunction to restrain the owner of adjacent land from improving his lot by excavating his soil to the line of complainant's lot. The bill does not charge that any damage has resulted to the land of complainant, or that the character of his soil is such that it cannot stand by its own coherence. There is a statement that the defendant has removed the soil for a space of seventy-five or one hundred feet, and that complainant has been injured $275 00. But the connection in which that statement is made shows that it was intended to mean that it would cost that amount for complainant to put up an artificial wall along the line of excavation. It does not appear that any of complainant's soil has been displaced, or that it necessarily must be, to an extent that will materially affect the value of her land. To arrest by injunction the improvements that are necessary in cities and towns on the ground that the digging and grading which are required for the use and enjoyment of a lot, is an injury to an adjoining proprietor, a clear case of damage, actual or inevitable, should be made out. In Smith *vs.* Thackerah, 1 Common Bench, 524, as stated in 2 Washburn on Real Property, the doctrine seems to be sustained that if the digging would not have caused any appreciable damage to the adjacent land in its natural state, it would

not be the ground of an action.    And in the same connection, 9 H. L. cases, 503; E. B. & E., 622; 6 H. and Norm., 454; 4 *Ibid.*, 186, are referred to.    Where the nuisance or the damage apprehended is doubtful or contingent, equity will not interfere by injunction, but will leave the party to his remedy at law: Ellison *vs.* Commissioners, etc., 5 Jones' Eq., 57; 6 *Ibid.*, 83; 2 Black, 552; 36 Alabama, 546.

As already stated, complainant does not show that her soil has been displaced, or that her land must necessarily be damaged so as to require the strong arm of equity to restrain the defendant from further improving his lot.    The defendant denies, by affidavit, that there has been any damage, or that, in his judgment, there will be any to complainant's land.    If any does result the defendant is fully able to respond.    The complainant in fact shows by her bill *the amount of damage* she may suffer on account of the alleged trespass, and alleges that it would require $600 00 to sustain the dirt wall which would be left by the excavation.    This fact, in view of the section of the Code hereafter cited, is entitled to consideration in determining whether the chancellor abused his discretion in refusing the injunction to arrest the defendant in the improvement of his property after one-half of it has been accomplished.    In Farrand *vs.* Marshall, 21 Barbour, 409, such an injunction was granted.    But the complainant's land had already, when the injunction was applied for, been caused to crack and subside, on account of the excavation, for a great portion of two sides of the lot, and which also seriously endangered the dwelling house.    The fear of the complainant in this case is that some of her soil may fall away, and her lot thereby become damaged.    Equity will not interfere to restrain a trespass unless the injury is irreparable in damages, or the trespasser is insolvent, or there exists other circumstances which, in the discretion of the court, render the interposition of this writ (injunction) necessary and proper, among which shall be the avoidance of circuity and multiplicity of actions: Code, section 3219.

We think that under the facts of this case the complainant

should be remitted to her action at law, if she does in fact suffer damage, rather than to establish a rule which would, on the ground of apprehended damages, so seriously interfere with the improvements that city and town lots necessarily require.

Judgment affirmed.